| | |
|---|---|
| JEFFREY H. WOOD<br>Acting Assistant Attorney General<br>Environment and Natural Resources Division<br><br>ESPERANZA ANDERSON<br>Pennsylvania Bar 62582<br>Senior Counsel<br>Environmental Enforcement Section<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044<br>Telephone: (202) 616-8756<br>Fax: (202) 616-2427<br>Email: esperanza.anderson@usdoj.gov<br><br>STEVEN W. MYHRE<br>Acting United States Attorney<br>TROY K. FLAKE<br>Assistant United States Attorney<br>501 Las Vegas Blvd., South, Suite 1100<br>Las Vegas, NV 89101 | ADAM PAUL LAXALT<br>Nevada Attorney General<br><br>KATIE S. ARMSTRONG<br>Nevada Bar 8571<br>Deputy Attorney General<br>100 N Carson Street<br>Carson City, Nevada 89701<br>Telephone: (775) 684-1224<br>Fax: (775) 684-1100 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>THE STATE OF NEVADA,<br><br>    Plaintiffs<br><br>    v.<br><br>THE CITY OF NORTH LAS VEGAS,<br><br>    Defendant | CASE NUMBER<br>2:17-CV-02508-APG-VCF<br><br>**UNOPPOSED MOTION TO**<br>**ENTER CONSENT DECREE** |

Plaintiff, the United States of America, acting on behalf of the United States Environmental Protection Agency (EPA), respectfully moves for entry of the Consent Decree filed with the Court on September 27, 2017 (EFC No. 2). This Motion is unopposed by Co-Plaintiff the State of Nevada, Department of Conservation and Natural Resources, Division of Environmental Protection, Bureau of Water Pollution Control (NDEP) and Defendant City of North Las Vegas (City).

The proposed Consent Decree embodies a settlement reached between all parties, and it resolves all the claims of both the United States and the State of Nevada filed against the City of

1

North Las Vegas in this case pursuant Sections 307 and 308 of the Clean Water Act (CWA), 33 U.S.C. §§ 1317-1318, the terms of the City's National Pollutant Discharge Elimination System permit (NPDES permit), the federal pretreatment regulations, found at 40 C.F.R. § 403, and Nevada Water Pollution Control Law Nev. Rev. Stat. §§ 445A.300-445A.730 (NWPCL).  As is required by the Department of Justice regulation 28 C.F.R. § 50.7, notice of the proposed settlement was published in the Federal Register on October 4, 2017.  See 82 Fed. Reg. 46287.  This notice established a thirty-day period for submission of public comments to the Department of Justice.  The United States has not received any comments in response to this notice.

For the reasons set forth in the accompanying memorandum of points and authorities, the Court should enter the Consent Decree by signing on page 28.

Respectfully submitted this 22nd day of November 2017.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
*s/ Esperanza Anderson*
ESPERANZA ANDERSON
Senior Counsel
Pennsylvania Bar No. 62582
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice, P.O. Box 7611
Washington, D.C.  29944-7611
(202) 514-4059
esperanza.anderson@usdoj.gov

STEVEN W. MYHRE
Acting United States Attorney

TROY K. FLAKE
Assistant United States Attorney
501 Las Vegas Blvd., South, Suite 1100
Las Vegas, NV 89101

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE UNITED STATES FOR THE ENTRY OF THE LODGED CONSENT DECREE**

## I. LEGAL AND FACTUAL BACKGROUND

### A. CWA Statutory Framework

The objective of the CWA is to restore and maintain the integrity of the nation's waters. Section 101(a) of the CWA, 33 U.S.C. § 1251(a). To accomplish this goal, the CWA prohibits the discharge of any pollutants to navigable waters from any point source, unless the discharge is in compliance with various provisions of the CWA. Section 301(a) of the CWA, 33 U.S.C. § 1311(a). One of the CWA's principal methods of regulating discharges is through the NPDES permit program established by Section 402 of the CWA, under which the discharge of pollutants from point sources may be authorized in accordance with the conditions and limitations of the permit. Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

Section 402(a) requires that NPDES permits meet all applicable requirements of the CWA, including the pretreatment requirements at Section 307 of the CWA, 33 U.S.C. § 1317. Section 307 of the CWA also requires the establishment of regulations to prevent the introduction of any pollutant into a Publicly Owned Treatment Works if that pollutant interferes with, passes through, or is otherwise incompatible with the operation of the POTW.[1]

Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows any State, upon application to and approval by EPA, to administer the NPDES permitting program. The State of Nevada, through NDEP, applied for and received authorization from EPA to administer the State's NPDES permitting program, and does so in accordance with the NWPCL. The State of Nevada, however, has not applied and EPA has not authorized the State to administer a Pretreatment Program as part of its NPDES permitting program. Consequently, EPA administers and is the Approval Authority for the Pretreatment Program in the State of Nevada.

---

[1] 40 C.F.R. § 403.3(q) defines a POTW as a "treatment works as defined by Section 212(2) of the [CWA], 33 § 1292(2), which is owned or operated by the state or a municipality . . . includ[ing] any devices or systems used in the storage [or] treatment. . . of municipal sewage . . ." unless the State has assumed that local responsibility.

Pursuant to Section 307(b)(c) and (d) of the CWA, EPA promulgated the General Pretreatment Regulations for Existing and New Sources of Pollution (General Pretreatment Regulations) at 40 C.F.R. Part 403. In pertinent parts, the General Pretreatment Regulations require the following:

- 40 C.F.R. § 403.8 requires that a Pretreatment Program be established by "[a]ny POTW … with a total design flow greater than 5 million gallons per day (mgd) and receiving from Industrial Users pollutants which [may] [p]ass [t]hrough or [i]nterfere with the operation of the POTW…."
- 40 C.F.R. § 403.8(f) requires a POTW Pretreatment Program to include, among other things, control mechanisms (such as permits) to ensure that Industrial Users sending wastewater to the POTW comply with pretreatment standards and requirements.
- 40 C.F.R. § 403.5 requires a POTW to develop specific limits as needed to prevent discharges that cause a violation of the POTW's NPDES permit, disrupt the POTW's treatment process, cause corrosion in the POTW, cause toxic gases presenting acute worker safety problems in the POTW, or violate various other prohibitions listed under 40 C.F.R. §§ 403.5(a)(1) and (b). These specific limits are known as local limits.
- 40 C.F.R. § 403.9 requires a POTW to submit its Pretreatment Program to the "Approval Authority" for approval.
- When a POTW's Pretreatment Program is approved, the POTW becomes a "Control Authority" as defined in 40 C.F.R. § 403.3(f).
- 40 C.F.R. § 403.8(f)(2)(i) requires the Control Authority to identify and locate all possible Industrial Users which might be subject to the POTW Pretreatment Program.
- 40 C.F.R. § 403.8(f)(1)(iii) requires the Control Authority to control through permits or similar means the wastewaters sent to the POTW by Industrial Users to ensure compliance with applicable Pretreatment Standards and

4

Requirements.

- 40 C.F.R. § 403.8(f)(1)(iii)(B)(4) requires the Control Authority to include notification requirements in enforceable individual discharge permits issued to Industrial Users.
- 40 C.F.R. § 403.8(f)(2)(v) requires the Control Authority to randomly sample and analyze the effluent of its Industrial Users, and to randomly sample and analyze the effluent of its Significant Industrial Users at least once a year.
- 40 C.F.R. § 403.12(o)(2) requires the Control Authority to maintain records of its monitoring activities for at least three years.
- 40 C.F.R. § 403.8(f)2)(v) requires the Control Authority to conduct inspections and surveillance activities of its Significant Industrial Users at least once a year in order to identify, independent of information supplied by Industrial Users, occasional and continuing noncompliance with pretreatment standards.
- 40 C.F.R. § 403.8(f)(2)(iv) requires the Control Authority to receive and analyze the self-monitoring reports and other notices submitted by its Industrial Users.
- 40 C.F.R. § 403.8(f)(2)(vi) requires the Control Authority to evaluate whether each of its Significant Industrial Users need to develop and implement a slug discharge control plan.
- 40 C.F.R. § 403.8(f)(5) requires the Control Authority to develop and implement an enforcement response plan, which contains detailed procedures indicating how the City will investigate and respond to instances of Industrial Users noncompliance.
- 40 C.F.R. § 403.8(f)(3) requires the Control Authority to have sufficient resources and qualified personnel to carry out the authorities and procedures required by 40 C.F.R. §§ 403.8(f)(1) and (2) for its Pretreatment Program.

Section 308 of the CWA, 33 U.S.C. § 1318, and Nev. Rev. Stat. §§ 445A.655 and

445A.660, authorize EPA and Nevada to require inspection and monitoring to determine compliance with the CWA, the NWPCL, and the NPDES permit. Additionally, Section 308 of the CWA mandates that EPA and Nevada are to have access to any records, reports or information related to compliance inspection and monitoring.

Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of Section 307 or 308 of the CWA, 33 U.S.C. § 1317 or 1318, or any permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Nevada provides similar authority to NDEP. Nev. Rev. Stat. §§ 445A.675 and 445A.695.

Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4 provide that any person who violates Section 307 or 308 of the CWA, 33 U.S.C. § 1317 or 1318, or violates any permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $37,500 per day per violation occurring on or before November 2, 2015, $51,570 per day per violation for CWA violations occurring after November 2, 2015. Nev. Rev. Stat. § 445A.700 provides a person who violates or aids or abets in the violation of any provision of Nev. Rev. Stat. §§ 445A.300 to 445A.730, inclusive, or of any permit, regulation, standard or final order issued thereunder, shall pay a civil penalty of not more than $25,000 for each day of the violation.

      B.     <u>The City of North Las Vegas' CWA Violations</u>

On or about June 2011, North Las Vegas constructed and commenced operating its waste water treatment plant (WWTP) and sanitary sewer system. Pursuant to Section 402(a) of the CWA, 33 U.S.C. § 1342(a), and Nev. Rev. Stat. § 445A.465, on or about April 12, 2010, NDEP issued North Las Vegas NPDES Permit number NV0023647 (2010 Permit), which expired in 2015. North Las Vegas's NPDES permit was reissued on or about April 1, 2015 (2015 Permit) and it expires on March 31, 2020.

At all relevant times herein, North Las Vegas' NPDES permit has authorized the City to discharge treated municipal wastewater from its WWTP to the Las Vegas Wash, subject to

certain limitations and conditions set forth in the NPDES permit.[2]

North Las Vegas' NPDES permit requires the City to comply with an EPA-approved Pretreatment Program.  NPDES Permit number NV0023647, at Section I.A.18(a), p13 (2010 Permit) and at Section B.PT.1.1., p 58 (2015 Permit); and the permit requires North Las Vegas to "implement and enforce [its] Pretreatment Program pursuant to 40 C.F.R. Part 403 . . . and be responsible for and liable for the performance of all Control Authority pretreatment requirements contained in 40 C.F.R. Part 403." NPDES Permit number NV0023647, at Section I.A.18, p13 (2010 Permit) and at Section B.PT.1, p58 (2015 Permit).

On September 29 and 30, 2014, EPA, PG Environmental, which is an EPA contractor, and NDEP completed a pretreatment compliance inspection of the North Las Vegas Pretreatment Program.  Thereafter, on June 26, 2015, EPA issued Administrative Order CWA-306(a)-15-011 to North Las Vegas citing the municipality with numerous violations of the CWA, its NPDES permit and the federal pretreatment regulations.  A summary of the City's violations, which are alleged in this case by EPA and NDEP are listed below:

1. The City failed to update its Sewer Use Ordinance (SUO) upon completion of the City's new WWTP in 2011; without North Las Vegas' SUO identifying its WWTP as part of the treatment works for the City, the City failed to have the necessary legal authority to apply and enforce 40 C.F.R. Part 403 as is required by the City's NPDES permit. Additionally, North Las Vegas' SUO failed to contain "streamlining provisions," promulgated by EPA, on October 14, 2005, in the federal pretreatment regulations, which are also required to be included in North Las Vegas' SUO pursuant to 40 C.F.R. Part 403 and its NPDES permit;

2. The City failed to submit for EPA's approval a Pretreatment Program as required by 40 C.F.R. § 403.8 and its NPDES permit;

---

[2] North Las Vegas discharges its treated wastewater through two designated outfalls: Outfall 001 discharges via Sloan Channel to the Las Vegas Wash and Outfall 002 discharges directly to Las Vegas Wash.  From these outfalls, North Las Vegas' wastewater then travels approximately twelve miles, at which point it is diverted under Lake Las Vegas, through two 7 foot diameter pipes, and then it discharges to Las Vegas Bay, which is the western edge of Lake Mead.

3. The City failed to identify and locate all possible Industrial Users which might be subject to the POTW Pretreatment Program as is required by 40 C.F.R. § 403.8(f)(2)(i) and its NPDES permit;

4. The City failed to develop technically specific limits (local limits) for its WWTP to prevent discharges that could cause a violation of its NPDES permit, disrupt the WWTP's treatment process, or violate various other prohibitions listed under 40 C.F.R. § 403.5(a);

5. The City failed to evaluate its permitting process and ensure that it controls the contribution of each industrial user to the WWTP through current, unexpired permits to ensure compliance with applicable pretreatment standards and requirements as is required by 40 C.F.R. § 403.8(f)(1)(iii) and its NPDES permit;

6. The City failed to include notification requirements in enforceable individual discharge permits issued to Industrial Users as is required by 40 C.F.R. § 403.8(f)(1)(iii)(B)(4) and its NPDES permit;

7. The City failed to randomly sample and analyze the effluent of its Industrial Users, and to randomly sample and analyze the effluent of its Significant Industrial Users at least once a year as is required by 40 C.F.R. § 403.8(f)(2)(v) and its NPDES permit;

8. The City failed to maintain records of its monitoring activities for at least three years as is required by 40 C.F.R. § 403.12(o)(2) and its NPDES permit;

9. The City failed to receive and analyze the self-monitoring reports and other notices submitted by its Industrial Users as is required by 40 C.F.R. § 403.8(f)(2)(iv) and its NPDES permit;

10. The City failed to conduct inspections and surveillance activities of its Significant Industrial Users at least once a year in order to identify, independent of information supplied by Industrial Users, occasional and continuing noncompliance with pretreatment standards as is required by 40 C.F.R.  § 403.8(f)2)(v) and its NPDES permit;

11. The City failed to evaluate whether each of its Significant Industrial Users needed to develop and implement a slug discharge control plan as is required by 40 C.F.R. §

403.8(f)(2)(vi) and its NPDES permit;

12. The City failed to develop and implement an enforcement response plan, which contains detailed procedures indicating how the City will investigate and respond to instances of Industrial Users' noncompliance as is required by 40 C.F.R. § 403.8(f)(5) and its NPDES permit;

13. The City failed to have sufficient resources and qualified personnel to carry out the authorities and procedures required by 40 C.F.R. §§ 403.8(f)(1)and(2) and its NPDES permit.

    C.    <u>Settlement Negotiations with the City of North Las Vegas</u>

In response to the Administrative Order, the City did not dispute any of the specific violations cited by EPA, but, instead, commenced to undertake all necessary steps to develop and seek approval of an appropriate pretreatment program, including getting the City's Managers to approve new sewer use ordinances and hire the additional WWTP personnel required to properly maintain a pretreatment program. Additionally, the City continued to cooperate with both EPA and NDEP to come into compliance with the federal pretreatment regulations, its NPDES permit, and the NWPCL.

After several months of negotiations, the parties reached a proposed settlement that is memorialized in the proposed Consent Decree lodged in this case.

    D.    <u>Proposed Consent Decree</u>

The proposed settlement requires the City to comply with its NPDES permit issued under the CWA, the federal pretreatment regulations found at 40 C.F.R. Part 403, and State laws Nev. Rev. Stat. §§ 445A.500-530. The proposed settlement also requires the City to submit its recently developed pretreatment program to EPA for final approval, and the settlement requires the City to pay a civil penalty of $385,000, which is to be split equally between the federal and state governments.

**II.     LEGAL STANDARD**

The legal standard for a district court's review of a proposed settlement is whether it is fair (substantively and procedurally), reasonable, and consistent with the purposes of the

1  statute under which the action is brought.  United States v. Aerojet Gen. Corp., 606 F.3d 1142,
2  1152 (9th Cir. 2010) citing  United States v. Montrose Chem. Corp. of Cal., 50 F. 3d 741, 747
3  (9th Cir. 1995); see also United States v. DiBiase, 45 F.3d 541, 543 (1st Cir. 1995) (quoting
4  United States v. Cannons Eng'g Corp., 899 F.2d 79, 85 (1st Cir. 1990)).

5  Additionally, although a district court generally makes an independent evaluation of
6  the settlement, federal courts have long recognized "the strong policy favoring voluntary
7  settlement of litigation." United States v. BP Exploration & Oil Co., 167 F. Supp. 2d 1045,
8  1050 (N.D. Ind. 2001) (citing Cannons, 899 F.2d at 840; United States v. Hooker Chem. &
9  Plastics Corp., 776 F.2d at 410, 411 (2d Cir. 1985)).  "This presumption is particularly strong
10 where a consent decree has been negotiated by the Department of Justice on behalf an agency,
11 like the EPA which is an expert in its field." United States v. Chevron U.S.A., 380 F. Supp.2d
12 1104, 1111 (N.D. Cal. 2005) (citing United States v. Akzo Coatings of Am., Inc., 949 F.2d
13 1409, 1426 (6th Cir.1991)); see also Hooker Chem., 776 F.2d at 411; SEC v. Randolph, 736
14 F.2d 525, 529 (9th Cir. 1984); Kelley v. Thomas Solvent Co., 717 F. Supp. 507, 515 (W.D.
15 Mich. 1989)).

16 Additionally, several courts have held that "[p]rotection of the public interest is the
17 key consideration in assessing whether a decree is fair, reasonable and adequate." See, e.g.,
18 Akzo, 949 F.2d at 1435 (citing In re Acushnet River & New Bedford Harbor, 712 F. Supp.
19 1019, 1028 (D. Mass. 1989) and United States v. Ketchikan Pulp Co., 430 F. Supp. 83, 86 (D.
20 Ala. 1977)); United States v. Georgia-Pac. Corp., 960 F. Supp. 298, 299 (N.D. Ga. 1996).  "A
21 consent decree may not contravene the statute upon which the initial claims are based.  Where
22 a law suit [sic] seeks to enforce a statute, the most important factor as to public policy is
23 whether the decree comports with the goals of Congress."  BP Exploration, 167 F. Supp. 2d
24 at 1054 (citing Sierra Club v. Coca-Cola Corp., 673 F. Supp. 1555, 1556 (M.D. Fla. 1987)).

25 **III.     LEGAL ANALYSIS**
26 A. The Proposed Consent Decree Is Fair Both Procedurally and Substantively.
27 The proposed Consent Decree is procedurally fair since counsel for the United States
28 and counsel for the State of Nevada negotiated the proposed settlement at arms-length with

10

experienced counsel who represented the interests of the City of North Las Vegas. See United States v. Chevron U.S.A., 380 F. Supp.2d at 1111 (typically, courts examine procedural fairness to determine whether the negotiations process was "fair and full of adversarial vigor"). Additionally, the Consent Decree embodies a substantively fair settlement since it requires the City to develop and implement a Pretreatment Program that will help protect against disruptions at the City's WWTP and help protect against unpermitted discharges to Las Vegas Wash in violation of the CWA. Additionally, it requires the City to pay a civil penalty of $385,000 for its past violations. See, e.g., United States v. Pacific Gas & Elec., 776 F.Supp.2d 1007, 1025 (N.D. Cal. 2011) (as to substantive fairness, "a court's approval is nothing more than an amalgam of delicate balancing, gross approximations and rough justice") (citations omitted) and BP Exploration, 167 F. Supp. 2d at 1051 ("substantive fairness concerns concepts of corrective justice and accountability") (citations omitted).

B. The Proposed Consent Decree Is Reasonable And Is Consistent With The Purposes Of CWA.

In determining whether a Consent Decree for an environmental matter is "reasonable," courts have considered whether the settlement adequately protects the public interest. See, Akzo, 949 F.2d at 1435 (citations omitted). In this case, Plaintiffs took into consideration a number of factors favorable to the public interest when proposing this settlement, including the environmental benefits, the potential cost of litigation, and whether the settlement is consistent with the CWA. As outlined above, a fundamental objective of the CWA is to restore and maintain the integrity of the nation's waters. Section 101(a) of the CWA, 33 U.S.C. § 1251(a). In this case, the City of North Las Vegas has worked cooperatively with EPA and NDEP to fashion a resolution that will have the City comply with the CWA and its NPDES permit by properly implementing a Pretreatment Program. The City's implementation of an appropriate Pretreatment Program not only protects its WWTP, but it also furthers the CWA's goal of maintaining the nation's waters without sustaining unpermitted discharges of pollutants; and the settlement obtains the City's compliance with the CWA in a far shorter time than if the parties had litigated the action. Additionally, the

settlement requires the City to pay an appropriate civil penalty for its historical violations. The civil penalty of $385,000 is to be split equally between the federal and state governments.

**CONCLUSION**

For the foregoing reasons, the United States respectfully moves to enter the lodged Consent Decree as final judgment in this case. The settlement is fair, reasonable, and consistent with the purposes of the CWA in that the Consent Decree mandates the City to comply with the CWA by implementing an EPA approved Pretreatment Program, which will help to prevent unpermitted discharges into the nation's waters, and the settlement minimizes litigation and transactional costs for all parties.

Date:   November 22, 2017

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
*s/ Esperanza Anderson*
ESPERANZA ANDERSON
Senior Counsel
Pennsylvania Bar No. 62582
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice, P.O. Box 7611
Washington, D.C.  29944-7611
(202) 514-4059
esperanza.anderson@usdoj.gov

STEVEN W. MYHRE
Acting United States Attorney

TROY K. FLAKE
Assistant United States Attorney
501 Las Vegas Blvd., South, Suite 1100
Las Vegas, NV 89101

# CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2017, I electronically filed the foregoing Unopposed Motion for Entry of Consent Decree and Memorandum in Support thereof with the Clerk of Court by using the CM/ECF system, and I served a copy of the same to all parties through their representatives, listed below.

<u>For the City of North Las Vegas</u>:

Christopher Craft
City Attorney
City of North Las Vegas
2250 Las Vegas Boulevard North
North Las Vegas, NV 89030

<u>For the State of Nevada</u>:

Katie S. Armstrong
Nevada Bar 8571
Deputy Attorney General
100 N Carson Street
Carson City, Nevada 89701
Telephone: (775) 684-1224
Fax: (775) 684-1100


Date: <u>November 22, 2017</u>                    *s/Esperanza Anderson*